# In the United States Court of Federal Claims

No. 22-1673

(Filed: February 10, 2025)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| GEORGE D. PREWITT, JR., | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*George D. Prewitt, Jr.*, Greenville, MS, *pro se*.

*Kristin E. Olson*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Holly Bryant*, Military Personnel Litigation Branch, U.S. Army Legal Services Agency, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

*Pro se* plaintiff, George Dunbar Prewitt, a former member of the United States Army, challenges a decision on remand by the Army Board for Correction of Military Records ("ABCMR") that afforded him a disability retirement. Mr. Prewitt contends that the decision was arbitrary, capricious, an abuse of discretion, and contrary to applicable law because the ABCMR failed to grant the full relief to which he is legally entitled, assigned him an incorrect disability percentage, and failed to remove an Article 15 nonjudicial punishment from his records. The government argues that the ABCMR's decision should be upheld and that Mr. Prewitt's challenge to the ABCMR's denial of his request to remove the nonjudicial punishment from his records should be dismissed for lack of jurisdiction because it was filed outside of the Tucker Act's six-year statute of limitations. For the reasons set forth below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Mr. Prewitt's Motion for Judgment on the Administrative Record ("MJAR"), **GRANTS-IN-PART** and **DENIES-IN-PART** the government's MJAR, and **GRANTS** the government's motion to dismiss.

## I. BACKGROUND

The Army drafted Mr. Prewitt on March 12, 1968, to fight in the Vietnam War. AR 36.[1] On February 22, 1969, Mr. Prewitt was shot in the neck. AR 36-37. On July 2, 1969, the Army

---

[1] The Court cites to the Administrative Record filed by the government at [ECF 73] as "AR ___."

issued Mr. Prewitt a DA Form 3349,[2] which stated that he was "medically qualified for limited duty" but restricted his assignments to avoid "crawling, stooping, running, jumping, prolonged standing or marching . . . strenuous physical activity . . . [and] prolonged handling of heavy materials including weapons." AR 62-63. The form provided that the conditions were permanent. AR 62. A chronological record of medical care also dated July 2, 1969, stated that Mr. Prewitt's "main complaint is now of some limitation of motion [and] pain to the left neck" and that the question of "a medical board is now raised." AR 64. The treating physician, however, recommended a "permanent profile but no board at this time." *Id.*

On August 19, 1969, Mr. Prewitt was subject to a forfeiture of $50.00 under Article 15 of the Uniform Code of Military Justice ("UCMJ") for failing to report to his duty station at the U.S. Lyster Army Hospital in Fort Rucker, Alabama, on August 18, 1969, and for disorderly conduct in the hospital parking lot. AR 147, 195, 197. He did not appeal the non-judicial punishment. AR 37, 198.

On September 22, 1969, Mr. Prewitt underwent an orthopedic physical evaluation to assess his fitness for retention. AR 137. The report stated that Mr. Prewitt could "elevate [his] left arm to 90 degrees but with some pain" and that he was "qualified for retention with [a] permanent profile, but [] suggest[ed] he have an ENT or plastic surgery consultation for further evaluation of painful neck injury residuals." *Id.*

In January of 1970, Mr. Prewitt underwent a physical examination as part of his scheduled end of service term. AR 147. In connection with the examination, Mr. Prewitt underwent a neurology consultation on February 16, 1970, to "evaluate and profile [his injury] for [s]eparation." AR 191. The consultation report indicated that "[e]ver since the injury he has experienced pain at the wound site, which has not improved following scar revision and removal of neuroma," and that Mr. Prewitt "complains of hyperesthesia over the upper portion of the back just to the left of the midline, pain in the left shoulder, and inability to abduct the left arm beyond 20 degrees." *Id.* The report further stated that he "actively abducts the left arm to about 20 degrees but is unable to go beyond this because of pain." *Id.* The report concluded: "The patient's neck wound apparently resulted in damage to the spinal accessory nerve on the left with resultant atrophy and loss of function in the upper portion of the left trapezius muscle." AR 191-92. The report also concluded that, "[f]rom a neurological point of view, he [was] fit for separation . . . ." AR 192. The Army released Mr. Prewitt from active-duty service on March 11, 1970, by reason of "[e]xpiration [of t]erm of [s]ervice," AR 17, "not by reason of physical disability," AR 170. Thereafter, he was transferred to the Army Reserve. AR 17, 170.[3]

A June 17, 1970, evaluation by the Department of Veterans Affairs ("VA") Regional Office noted that Mr. Prewitt could not move his arm beyond 60 to 75 degrees, and assigned him a disability rating of 30 percent under Diagnostic Code 5301 (muscle injury) and 8211 (cranial nerve injury). AR 375, 596. The rating decision sheet described the injury as "perforating [gun

---

[2] "The DA Form 3349 is part of the Army's physical profiling system, which is used to determine whether a physical condition has temporarily or permanently affected a soldier's ability to perform his or her military duty." *Adams v. United States*, 117 Fed. Cl. 628, 630 n.4 (2014).

[3] Mr. Prewitt was honorably discharged from the Army Reserve on March 1, 1974. AR 148, 175.

shot wound], left neck and shoulder (major), involving muscle [group] I with injury to spinal accessory nerve, excision of neuroma, limitation of motion of left shoulder and atrophy of trapezius." AR 597 (capitalization omitted). Mr. Prewitt did not appeal the rating decision. AR 366.

However, in an order by the Board of Veterans' Appeals ("BVA") dated April 17, 2019, it was noted "that the June 1970 RO adjudicators committed [clear and unmistakable error] by failing to assign a separate rating for residual scar[r]ing from [the gunshot wound] to the left neck and shoulder." AR 740, 756-57. The BVA then determined that "[t]he evidence supports a 10 percent rating under Diagnostic Code 7804 for residual scar[r]ing from [the gunshot wound] to the left neck and shoulder, from March 12, 1970, to January 1, 1980." AR 757. Therefore, as of April 2019, the VA assigned Mr. Prewitt a combined disability rating, effective March 1970, of 40 percent: 30 percent under Diagnostic Code 5301-8211 (muscle injury and cranial nerve injury from gunshot wound) and 10 percent under Diagnostic Code 7804 (residual scarring from gunshot wound). AR 787-88. The VA has periodically adjusted his disability rating since 1980 to account for additional service-connected disabilities, as his impairments have evolved over time. *See* AR 787-89.

On August 26, 2019, Mr. Prewitt applied to the ABCMR for a correction to his records, arguing that he "should have been considered for a military disability retirement due to the muscle-atrophying effects of the through-and-through gunshot wound to [his] left neck" which occurred while he was serving in Vietnam. AR 157. The ABCMR asked the Army Review Board Agency ("ARBA") medical advisor to review Mr. Prewitt's case. AR 149. The ARBA medical advisor found that Mr. Prewitt should have been referred to the Physical Disability Evaluation System ("DES") at the time of his separation "as []his injury failed at least two medical retention standards." AR 151. The advisor noted that Mr. Prewitt "has several VA service[-]connected disability ratings, . . . which are likely due to the gunshot wound to his neck." AR 152. The medical advisor opined "that a long overdue referral of this case to the [DES] is clearly warranted." *Id.*

The ABCMR concluded that Mr. Prewitt was entitled to partial relief and referred his claim to the Office of the Surgeon General "to determine if the disability evaluation he received from the Army accurately depicted his conditions as they existed at the time." AR 153.[4] The ABCMR added: "If a review by the Office of The Surgeon General determines the evidence supports amendment of his disability evaluation records, [Mr. Prewitt] will be afforded due process through the [DES] for consideration of any additional diagnoses (or changed diagnoses) identified as having not met retention standards prior to his discharge." *Id.* The Office of Surgeon General asked Dr. Robert B. Coutant of the Fort Benning Medical Evaluation Board to review Mr. Prewitt's records. AR 140. Dr. Coutant determined that Mr. Prewitt "did not require referral to the DES" in the February 1970 timeframe. AR 142 (emphasis omitted). Thereafter, the Office of the Surgeon General endorsed Dr. Coutant's opinion. *See* AR 140. The ARBA then informed Mr. Prewitt that "it was determined that [he] did not require disability processing at the time of separation." AR 139.

---

[4] Although the ABCMR noted that Mr. Prewitt "did not file within the three-year time frame provided in Title 10, United States Code, section 1552(b)," it nevertheless found, after conducting a substantive review of his case, that "it [was] in the interest of justice to excuse [his] failure to timely file." AR 145.

On November 9, 2022, Mr. Prewitt filed a complaint in this Court challenging the ABCMR's decision as arbitrary, capricious, an abuse of discretion, and contrary to law, arguing that he should be provided a medical disability retirement. Compl. [ECF 1] ¶ 22. Mr. Prewitt also sought removal of the Article 15 nonjudicial punishment from his record and a refund of the associated $50 fine. [ECF 1] ¶ 21. After reviewing the Complaint and other filings, the government moved to remand Mr. Prewitt's case to the ABCMR because it "did not afford Mr. Prewitt an opportunity to submit any arguments or evidence in response to Dr. Coutant's opinion or the Office of the Surgeon General's memorandum." Def.'s Mot. to Remand [ECF 18] at 3-4.[5] Mr. Prewitt opposed the motion: "There is no factual basis in my post-active duty record to support Dr. Coutant's ex parte findings . . . ." Pl.'s Resp. to Def.'s Mot. to Remand [ECF 20] at 4 (emphasis omitted). He added: "It should be plain . . . that Dr. Coutant omitted vital information in my military records that would have contradicted his conclusion that I should have not been permitted access to the [DES] in 1970." *Id.* at 6. The Court granted the government's motion for remand on April 25, 2023, finding that allowing the ABCMR to reconsider its decisions based on new rebuttal arguments and evidence from Mr. Prewitt and allowing Mr. Prewitt to raise any new claims, including his claim relating to the Article 15 punishment, were legitimate reasons for a remand. *See Prewitt v. United States*, 2023 WL 3083162, at *2 (Fed. Cl. Apr. 25, 2023).

In his application to the ABCMR, Mr. Prewitt argued that under Army Regulation 635-200, he was "considered to be in the DES process from July 2, 1969[,] when the DA Form 3349 and the 'Health Record' of the same date were issued." AR 56. Therefore, he contended that he "should have been considered for military retirement in 1969 . . . ." AR 55. He further stated that he was never presented with the waiver form and thus never given the opportunity to waive his right to separation because of physical disability, as required by Section 4.2(c) of Army Regulation 635-200. *See* AR 56. With respect to the Article 15 punishment, Mr. Prewitt challenged its validity on the grounds that the infractions are not "found within the 'punitive articles' of Title 10, U.S. Code," AR 58, and that he was "denied [his] right of appeal," *id.* Mr. Prewitt contends that, but for the wrongful Article 15 punishment and his subsequent orders to report to Fort Benning, Georgia, he "would have remained in the Medical Hold Detachment at Fort Rucker, Alabama in 1969 and would have been considered for medical retirement from the military in 1969." AR 61. He requested the following relief:

> I request that I be placed back in a Medical Hold Detachment, or its present day equivalence, that I be treated as if I had remained in the Medical Hold Detachment from August 20, 1969 to the present, together with all due compensation with interest from August 20, 1969 to the present, and that I be medically retired from the Army with appropriate compensation from the present day forward.

*Id.* On August 22, 2023, the ABCMR granted Mr. Prewitt partial relief. *See* AR 29-47. The ABCMR stated:

> 2. The Board agreed that the preponderance of the evidence supported the applicant's contention that, during his military

---
[5] All page numbers in the parties' filings refer to the page numbers generated by the CM/ECF system.

> service, he had a medical condition that failed retention standards. The condition, a gunshot wound to the left neck causing injury to the nerves and muscles in the left shoulder that limited range of motion, prevented the applicant from performing the duties of an infantryman, thus rendering him unfit. An error or injustice occurred when the Army did not process the applicant through the Physical [DES]. In retrospect, the preponderance of the evidence suggests the applicant would have been medically separated at the conclusion of the process rather than being separated due to expiration of his term of service.
>
> 3. The Board considered the VA rating that the applicant received for the unfitting condition, effective 12 March 1970, and adopts it as the Army rating for purposes of his disposition. Since the VA rated the unfitting condition at 30 percent, the Army rating will be 30 percent. Based on a preponderance of the evidence, the Board determined the applicant's record should be corrected to show he was retired for permanent disability with a 30 percent disability rating effective 11 March 1970, with placement on the Permanent Disability Retired List the following day.

AR 43. The ABCMR recommended correcting Mr. Prewitt's records to show that "he was retired for permanent disability with a 30 percent disability rating effective 11 March 1970, with placement on the Permanent Disability Retired List the following day." AR 44. With respect to the Article 15 punishment, the ABCMR "concluded the preponderance of the evidence does not show an error or injustice occurred," and therefore no relief was warranted. AR 43-44.

On October 5, 2023, Mr. Prewitt filed notice pursuant to Rule 52.2(e) of the Rules of the United States Court of Federal Claims ("RCFC"), informing the Court that the ABCMR decision did not provide a satisfactory basis for disposition of the case. Pl.'s Rule 52.2(e) Notice [ECF 41]. Mr. Prewitt challenged the 30 percent disability rating assigned by the ABCMR, *see id.* at 7, asserted that he should be given the option to elect retirement on length of service or a disability retirement, *see id.* at 12, and argued that the Article 15 charge in 1969 should be voided and removed from his records, *see id.* at 14, 17. The government filed its RCFC 52.2(e) notice on October 6, 2023, stating that the ABCMR's "decision is satisfactory to the United States, and, in [its] view, no further Court proceedings are required in this case." Def.'s Rule 52.2(e) Notice [ECF 40] at 2. The government explained that "[t]he benefits that flow from [Mr. Prewitt's corrected disability] rating will be calculated by the Defense Finance and Accounting Service (DFAS) once Mr. Prewitt's revised formal discharge document, DD-214, is issued." *Id.* Regarding the Article 15 charge, the government stated that, "because Mr. Prewitt filed his complaint more than six years after March 11, 1970, the date of his separation from active duty, his Article 15 claim falls outside the statute of limitations, and this Court does not have jurisdiction over that claim." *Id.*

The Court held a status conference on November 16, 2023, to discuss further proceedings in this case. Order [ECF 48]. After the conference, the Court ordered the government to file a

5

status report "detailing the DFAS's progress in calculating Mr. Prewitt's entitlement as a result of the ABCMR's August 23, 2023, decision." Order [ECF 49] at 1. The Court further ordered DFAS to "expedite Mr. Prewitt's entitlement calculation," and directed the government to "confer with Mr. Prewitt to discuss DFAS's calculations in relation to the ABCMR's decision." *Id.* Subsequently, on January 22, 2024, the government informed the Court that it had identified a Retirement Services Officer (RSO) to assist Mr. Prewitt in gathering the information needed by DFAS to complete the entitlement calculation, including providing Mr. Prewitt with a retired pay application or DD 2656. *See* Def.'s Status Report [ECF 58] at 1-2. The government also stated that it could not "proceed until the RSO receives the completed DD2656 form from Mr. Prewitt." *Id.* at 2. On March 14, 2024, the government informed the Court that "the parties ha[d] reached a stalemate regarding the execution of the August 22, 2023 remand decision of the [ABCMR]." Def.'s Status Report [ECF 69] at 1. The government added: "Mr. Prewitt has declined to complete the DD 2656 . . . [and] DFAS cannot create Mr. Prewitt's retirement account or calculate any entitlement that results from the ABCMR's remand decision until the DD 2656 is submitted." *Id.* at 3. Furthermore, the government stated that "it appears that Mr. Prewitt does not want the Government to proceed [with calculating his retirement benefits] until certain legal disputes are settled." *Id.* at 4.

The Court held another status conference on March 18, 2024, to discuss further proceedings. Order [ECF 71]. After the status conference, the Court issued a scheduling order for filing cross-MJARs to address the outstanding legal issues raised by Mr. Prewitt. Scheduling Order [ECF 72]. The government filed the administrative record on April 19, 2024. AR [ECF 73]. The parties then filed their respective cross-MJARs, which were fully briefed as of September 6, 2024. *See* Pl.'s Renewed Mot. for Partial J. [ECF 52]; Def.'s Cross-Mot. for J. on the AR & Partial Mot. to Dismiss [ECF 79]; Pl.'s Resp. [ECF 87]; Def.'s Reply [ECF 90]; Pl.'s Resp. to the Def.'s 8/19/2024 Doc. [ECF 92]; Second Pl.'s Resp. to the Def.'s 8/19/2024 Doc. [ECF 94].[6]

On December 3, 2024, the Court asked the parties about their availability for oral argument on the pending cross-MJARs. Order [ECF 96] at 1. Mr. Prewitt expressed concerns about participating in an oral argument due to his age, and instead proposed responding in writing to the Court's questions. *Id.* The Court adopted Mr. Prewitt's alternative approach to oral argument and ordered that the parties respond in writing to its questions. *Id.* Mr. Prewitt provided responses on December 18, 2024, Pl.'s Resp. [ECF 98], and the government responded on January 8, 2025, Def.'s Resp. [ECF 102]. On January 15, 2025, Mr. Prewitt filed a reply to the government's response. Mot. for Permission [ECF 104]. The Court ordered that the reply be filed by leave. Order [ECF 103].

## II.   LEGAL STANDARDS

Under RCFC 52.1(c), parties may move for judgment on the administrative record. "When reviewing a motion for judgment on the administrative record . . . the court may make factual findings based on record evidence 'as if it were conducting a trial on the record.'" *Wollman v. United States*, 108 Fed. Cl. 656, 671 (2013) (quoting *Bannum, Inc. v. United States*,

---

[6] As noted in the Court's March 25, 2024, scheduling order, the Court treated Mr. Prewitt's December 8, 2023, motion for partial summary judgment as his MJAR. *See* [ECF 72] at 1.

404 F.3d 1346, 1353-54 (Fed. Cir. 2005)). The inquiry before the court is whether a decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014). "Even when the administrative record is silent as to some disputed facts, the court may still render judgment if the agency provided an adequate discussion of the bases of its decision." *Wollman*, 108 Fed. Cl. at 672.

"[J]udicial review of decisions of military correction boards is conducted under the [Administrative Procedure Act]" standard of review. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009); *see Brooks v. United States*, 65 Fed. Cl. 135, 140 (2005) ("The Court reviews the decision of a Secretary acting through a Correction Board according to a standard borrowed from the [APA]."). Under this standard, the court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). The plaintiff bears the burden of showing, by "cogent and clearly convincing evidence," that a correction board's action is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)).

Jurisdiction is a threshold issue that the court must resolve before proceeding to the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (stating that jurisdiction is a threshold matter); *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004) (stating that jurisdiction must be established before proceeding to the merits). "The Tucker Act governs whether this court has subject matter jurisdiction." *Santiago v. United States*, 71 Fed. Cl. 220, 227 (2006) (citing 28 U.S.C. § 1491). The Tucker Act confers upon this Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "Claims under the Tucker Act are subject to the six-year statute of limitations in 28 U.S.C. § 2501." *Chambers*, 417 F.3d at 1223. Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "Generally, [a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for [the plaintiff's] money.'" *Jones v. United States*, 30 F.4th 1094, 1100 (Fed. Cir. 2022) (alterations in original) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)). While a wrongful discharge claim seeking backpay under the Military Pay Act, 37 U.S.C. § 204, accrues at the time of discharge, *Martinez*, 333 F.3d at 1303, a disability retirement pay claim under 10 U.S.C. § 1201 "generally do[es] not accrue until the appropriate military board either finally denies such a claim or refuses to hear it," *Chambers*, 417 F.3d at 1224.

When considering a motion to dismiss for lack of jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed.

Cir. 2011) (citing *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995)). The plaintiff bears "the burden of establishing jurisdiction, including jurisdictional timeliness . . . ." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). If a plaintiff's claim is filed outside of the six-year statute of limitations, this court lacks jurisdiction over the claim, and it must be dismissed. *Jordan v. United States*, 158 Fed. Cl. 440, 448 (2022); *see* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The court may afford a *pro se* plaintiff "leniency with respect to mere formalities." *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). However, "where the question is the calculation of the time limitations placed on the consent of the United States to suit, a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only." *Id.*

### III.    ANALYSIS

Mr. Prewitt challenges the ABCMR's decision on three grounds. First, Mr. Prewitt argues that Army Regulation 635-200 gave him the option of remaining in active-duty status instead of being separated for expiration of his term of service and that, therefore, the ABCMR should have restored him to active-duty status through the present day and applied his disability retirement status from the present day forward. *See* [ECF 52] at 4-11; [ECF 92] at 1-5. Second, Mr. Prewitt argues that he is entitled to a higher disability percentage than the 30% assigned by the ABCMR. *See* Pl.'s Mot. for Partial J. [ECF 44] at 1-10; [ECF 52] at 12. Third, Mr. Prewitt argues that the ABCMR improperly failed to remove his UCMJ Article 15 nonjudicial punishment from his records. *See* [ECF 44] at 10-11; [ECF 87] at 9-10; [ECF 92] at 7-8. In response, the government states that "Mr. Prewitt separated from active duty on March 11, 1970[;] [that] Mr. Prewitt has not, and cannot, demonstrate that he would have remained on active duty until August 2023[;] [and that] Mr. Prewitt's date of separation is not before the Court." [ECF 90] at 6. Regarding the disability percentage assigned by the ABCMR, the government asserts that the ABCMR's "decision to grant Mr. Prewitt retirement disability and set his disability rating at 30 percent is supported by substantial evidence." [ECF 79] at 22. Finally, the government contends that the ABCMR's decision to deny his Article 15 challenge is not reviewable because it falls outside of this Court's statute of limitations, and therefore Mr. Prewitt's challenge to the Article 15 decision should be dismissed. *Id.* at 22, 34-36. As explained below, the Court finds that the ABCMR provided Mr. Prewitt with appropriate relief, that the ABCMR was arbitrary in failing to consider the corrected VA disability rating, and that Mr. Prewitt's challenge to his Article 15 nonjudicial punishment is time-barred.

### A.    Mr. Prewitt's Challenges Under Army Regulation 635-200

Mr. Prewitt argues that the ABCMR erred by not granting him the full relief to which he is entitled under law. [ECF 52] at 4-11; [ECF 92] at 1-5. He contends that he asked to "be placed back in a Medical Hold Detachment, or its present day equivalen[t], that [he] be treated as if [he] had remained in the Medical Hold Detachment from August 20, 1969 to the present, together with all due compensation with interest from August 20, 1969 to the present, and that [he] be medically retired from the Army with appropriate compensation from the present day forward." [ECF 52] at 4-5 (emphasis omitted). Instead of granting his requested relief, the ABCMR retroactively determined that he "would have been medically separated at the conclusion of the

8

[DES] process rather than being separated due to expiration of his term of service," *id.* at 4 (emphasis omitted), and corrected his records to show that he was permanently retired effective March 11, 1970, *id.* at 3. Mr. Prewitt argues that, per Army Regulation 635-200, he should have been given the opportunity to remain in active-duty status while he was being processed in the DES. *See id.* at 5-6; [ECF 104] at 1-7. By being retired effective March 11, 1970, he asserts that he was deprived of the rights and advantages of remaining in active-duty status, including receipt of active-duty pay and allowances, accumulation of additional active service creditable for longevity and retirement for length of service, and the option to elect retirement pay. *See* [ECF 52] at 7-9; [ECF 92] at 5.

The Court finds that the relief provided by the ABCMR—correcting Mr. Prewitt's records to show that he was retired for permanent disability—was appropriate and consistent with the law. Under 10 U.S.C. § 1552, the Secretary of the Army, acting through the ABCMR, has the authority to correct military records when necessary to rectify an error or remove an injustice. *See* 10 U.S.C. § 1552(a); *Denton v. United States*, 204 Ct. Cl. 188, 199 (1974) (Section 1552 "grants to the Secretary, acting through the Correction Board, the power to correct records when a correction is necessary to rectify an error or remove an injustice."). As explained by the United States Court of Appeals for the Federal Circuit, "the discretionary power granted to the Correction Boards by [10 U.S.C. § 1552] includes the power to backdate discharges where such backdating places the claimant where he likely would have been absent the improper discharge." *Barnick v. United States*, 591 F.3d 1372, 1380 (Fed. Cir. 2010) (alteration in original) (quoting *Denton*, 204 Ct. Cl. at 200). Put differently, "the Board necessarily has the power not only to correct [a claimant's] records to give him relief, but to do so in a manner that places him in the position he would have occupied absent the improper discharge." *Keltner v. United States*, 165 Fed. Cl. 484, 505 (2023) (citing *Barnick*, 591 F.3d at 1380).

Here, the ABCMR determined that "[a]n error or injustice occurred when the Army did not process [Mr. Prewitt] through the Physical [DES]," AR 43, and that, "[i]n retrospect, the preponderance of the evidence suggests [Mr. Prewitt] would have been medically separated at the conclusion of the process rather than being separated due to expiration of his term of service," *id.* The ABCMR recommended that the Army correct Mr. Prewitt's records to show that "he was retired for permanent disability with a 30 percent disability rating effective 11 March 1970, with placement on the Permanent Disability Retired List the following day." AR 44. The ABCMR is "competent to make such a retroactive disability determination." *Barnick*, 591 F.3d at 1380 (citing *Sawyer v. United States*, 930 F.2d 1577, 1581 (Fed. Cir. 1991)). Furthermore, doing so placed Mr. Prewitt in the position he would have occupied absent the Army's failure to properly process him through the DES. *See id.* Having determined that Mr. Prewitt was improperly denied disability payments due to the Army's error or injustice in 1970, the ABCMR properly concluded that he should be entitled to receive the disability payments due as of the date of his separation. *See id.* (concluding that a service member who is improperly denied disability benefits is only entitled to receive retroactive disability payments). Thus, Mr. Prewitt has received the full relief to which he is entitled.

The Court is not persuaded by Mr. Prewitt's argument that the ABCMR failed to grant him full relief because it did not restore him into active-duty and allow him to be properly processed through the DES. *See* [ECF 52] 4-11; [ECF 87] at 7-8. Since the ABCMR determined

9

that Mr. Prewitt was incorrectly separated due to the expiration of his term of service and that he should have been separated because he was unfit, *see* AR 43, Mr. Prewitt contends that he should be placed back into active-duty status and permitted to waive "processing for separation by reason of physical disability" under Section 2.2(c) of Army Regulation 635-200, [ECF 52] at 6. He further argues that, under Section 2.6 of the regulation, he should have the option to be retained in active-duty service and be counseled on the advantages of being retained in active-duty prior to his disability separation. [ECF 52] at 7. However, while these procedural protections could have been triggered had Mr. Prewitt been properly found to be unfit in 1970, they are not triggered now because of the ABCMR's correction of his record. *See Keltner*, 165 Fed. Cl. at 505-06 (explaining that the board corrected the service member's record for the purpose of crafting a remedy and that disability processing procedural requirements were not triggered). The ABCMR's determination that Mr. Prewitt should have been determined unfit for retention and the resultant correction of his record to show a disability retirement "is not a time machine" that places Mr. Prewitt back in a medical hold detachment in 1970 awaiting processing in the DES. *Id.* at 505. It does not "retroactively require[] the [Army] to follow procedures it can no longer follow because of the passage of time." *Id.*[7]

Further, there is no evidence that Mr. Prewitt would have been able to continue in active duty in 1970, and such a proposition contradicts the basis for his instant claim—that his condition at the time of separation was sufficiently severe and permanent to warrant a disability retirement. This type of claim "do[es] not support treating a service member as being on constructive active duty." *Barnick*, 591 F.3d at 1379. The objective of the ABCMR "was to review [Mr. Prewitt's] records and to place [Mr. Prewitt] in the position he would have been in, but for any errors which may have been committed by the [Army] at the time of his separation." *Petri v. United States*, 104 Fed. Cl. 537, 558 (2012). By correcting Mr. Prewitt's records to show that he was retired for permanent disability effective March 11, 1970, the ABCMR "merely proceeded in such a manner as to best approximate, in its judgment, what would have occurred in [1970] but for the improper [separation]." *Barnick*, 591 F.3d at 1380.

The ABCMR's conclusion that Mr. Prewitt "would have been medically separated at the conclusion of the [DES] process," AR 43, is supported by substantial evidence. The ABCMR carefully considered Mr. Prewitt's "application, all supporting documents, and the evidence found within the military record." *Id.* Of note, the ABCMR decision also cited to the DA Form 3349 dated July 2, 1969, which showed that Mr. Prewitt "was placed on a physical profile based on his gunshot wound," that his conditions placed significant limitations on his ability to perform his duties, and that his conditions were permanent. AR 37. It next cited to a clinical record from a physical examination that Mr. Prewitt underwent on January 20, 1970. *Id.* The record stated that, ever since Mr. Prewitt's injury, "he has experienced pain at the wound site, which has not improved . . . [and] complains of hyperesthesia over the upper portion of the back just to the left of the midline, pain in the left shoulder, and inability to abduct the left arm beyond 20 degrees."

---

[7] To the extent Mr. Prewitt is arguing that he was wrongfully separated on March 11, 1970, and that he was legally entitled to continue in active duty absent error by the Army, this constitutes a wrongful discharge claim that is barred by the Tucker Act's six-year statute of limitations for suits brought in this Court. *See* 28 U.S.C. § 2501; *Martinez*, 333 F.3d at 1310 (holding that a cause of action for recovery of the monetary losses suffered because of a wrongful discharge from active duty accrues on the date of the discharge). A wrongful discharge claim seeking back pay is distinguishable from a disability retirement claim seeking disability pay. *See Chambers*, 417 F.3d at 1223-25.

AR 37-38. It further stated that Mr. Prewitt "is unable to shrug the left shoulder, and the loss of trapezius muscle mass renders the upper part of the left scapula easily palpable and somewhat tender. . . . [and that he] actively abducts the left arm to about 20 degrees but is unable to go beyond this because of pain." AR 38. Finally, the ABCMR also cited a medical advisory opinion issued by the ARBA medical staff in connection with Mr. Prewitt's initial ABCMR hearing. *Id.* Therein, the ARBA medical staff advised that Mr. Prewitt was mistakenly found to be fit for separation and that he should have been evaluated by the DES because he failed two medical retention standards by being unable to "abduct or forward elevate the arm at the shoulder to at least 90 degrees . . . [and because the f]laccid paralysis of one or more muscles . . . [caused a l]oss of function which preclude[d the] satisfactory performance of duty . . . ." AR 39-40. Based on this record evidence, the ABCMR reasonably determined that "the preponderance of the evidence supported [Mr. Prewitt's] contention that, during his military service, he had a medical condition that failed retention standards." AR 43. Specially, the ABCMR agreed with Mr. Prewitt that his "condition, a gunshot wound to the left neck causing injury to the nerves and muscles in the left shoulder that limited range of motion, prevented [him] from performing the duties of an infantryman, thus rendering him unfit." *Id.* The Court will not disturb the ABCMR's judgment.[8]

### B.     Mr. Prewitt's Challenge to His Disability Percentage

Mr. Prewitt challenges the 30 percent disability rating assigned by the ABCMR as arbitrary and contrary to law, arguing that the ABCMR adopted the June 17, 1970, disability rating without considering other record evidence that shows he was entitled to a higher disability rating at the time of his release from active duty.[9] *See* [ECF 44] at 1-10; [ECF 52] at 12. He

---

[8] Mr. Prewitt cites the "half a loaf" doctrine to argue that the ABCMR erred by not granting him full relief. "The 'half-a-loaf' doctrine is an exception to the general rule that a plaintiff's claim for relief arises at the time of improper dismissal in military pay cases." *Homcy v. United States*, 536 F.2d 360, 364 (Ct. Cl. 1976). The doctrine "normally applies where a corrections board grants plaintiff's claim, but stops short of awarding the full appropriate relief requested by [the] plaintiff." *Bonen v. United States*, 666 F.2d 536, 539 (Ct. Cl. 1981). The "[f]ailure of the board to grant full relief where it is mandated by the records change [thus] results in a new cause of action or continuing claim which revives the statute of limitations." *Id.* (quotation marks omitted). Here, the government concedes that the Court has jurisdiction over Mr. Prewitt's disability retirement claim because he filed his complaint within six years of the ABCMR's initial decision denying his claim for disability retirement. [ECF 102] at 3-4. Further, the government does not argue that Mr. Prewitt is barred by the statute of limitations from challenging the ABCMR's decision on his disability retirement claim. *See* [ECF 90] at 4. Because the Court finds that the ABCMR granted Mr. Prewitt the full relief mandated by the record correction, the exception to the statute of limitations provided by the "half a loaf" doctrine is not implicated. *See Jones v. United States*, 225 Ct. Cl. 643, 644 (1980) (stating that "[i]f . . . the part of the requested relief that the board denied did not flow logically and legally from the record correction it granted, a new cause does not accrue on the denied portion"); *Rumph v. United States*, 288 Ct. Cl. 855, 857 (1981) (stating that the half a loaf doctrine "applies only where the relief sought should have followed as a matter of law from the partial relief granted by the Correction Board"); *Debow v. United States*, 434 F.2d 1333, 1335 (Ct. Cl. 1970) (explaining that "[a] major reason why we have extended the concept of a 'new cause of action' or a 'continuing claim' to petitions grounded upon a beneficial administrative determination which cuts off a claimant without the full relief he seeks, and to which he is entitled, is that, once the Board decides to give a remedy, it should not be free to slice the relief illegally or arbitrarily, sending the claimant forth with half-a-legal-loaf or even less").

[9] The government argues that Mr. Prewitt waived his right to challenge the ABCMR's assigned disability rating because "he did not claim that he was entitled to a specific disability percentage." [ECF 79] at 30. The Court disagrees. Because Mr. Prewitt was incorrectly separated for expiration of his term of service—as determined by the

further argues that this Court should not "permit the ABCMR to blindly parrot the 1970 rating of the VA instead of obeying its statutory mandate to independently assess [his] neck muscle injuries that were diagnosed in a July 2, 1969 health record [] as 'some restriction of motion in left neck.'" [ECF 87] at 9. He contends that, under 10 U.S.C. § 1216a, the ABCMR was required to utilize the VA schedule for rating disabilities and account for all medical conditions. [ECF 52] at 11. He also states that the ABCMR's adoption of the 1970 VA rating decision "ignored the multiple unfitting conditions listed by the ARBA medical advisor" and failed to independently apply the VA rating schedule to those injuries. [ECF 63] at 17. He believes that if the ABCMR had used the VA rating schedule, it would have assigned him a higher disability rating. [ECF 52] at 12; [ECF 63] at 15-22.

       Under 10 U.S.C. § 1216a, the Army "shall, to the extent feasible, utilize the schedule for rating disabilities in use by the Department of Veterans Affairs." 10 U.S.C. § 1216a(a)(1)(A). In doing so, the Army is required to "take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C. § 1216a(b). Despite utilizing the same ratings schedule, the disability ratings assigned by the Army and the VA serve different purposes and consider different factors. *See Schmidt v. Spencer*, 319 F. Supp. 3d 386, 393 (D.D.C. 2018) (explaining that the military and the VA use the same disability rating schedule in entirely different ways), *aff'd sub nom. Schmidt v. McPherson*, 806 F. App'x 10 (D.C. Cir. 2020); *Mazarji v. United States*, 164 Fed. Cl. 298, 309 (2023) (explaining that "although the DOD and VA use the same ratings schedule and evaluation system to assign a disability percentage, the departments' compensation regimes differ in important ways"). The Army uses the VA disability rating schedule "to determine whether or not the service member is fit 'to perform the duties of office, grade, rank, or rating.'" *Stine v. United States*, 92 Fed. Cl. 776, 795 (2010) (quoting *Haskins v. United States,* 51 Fed. Cl. 818, 826 (2002)), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011). The Army is concerned with "what compensation the service member is due for the interruption of his military career . . . [and, therefore, bases its rating on] a snapshot of the service member's condition at the time of separation from the service." *Stine*, 92 Fed. Cl. at 795 (citations omitted). In contrast, the VA uses the disability rating schedule to assign "disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world." *Id.* (quoting *Haskins*, 51 Fed. Cl. at 826). Because the VA is examining an individual's ability to engage in the civilian world, it "evaluates and adjusts disability ratings throughout the individual's lifetime." *Id*. Consequently, the disability ratings assigned by the Army and the VA may differ. *See Mazarji*, 164 Fed. Cl. at 309 ("These features can cause a servicemember to be assigned different DOD and VA disability ratings."). Because of these differences, "VA decisions are 'not determinative

---

ABCMR—he was not processed through the DES and was not assigned a disability rating by the Army. Therefore, the ABCMR was the first competent board to consider his eligibility for a disability retirement and assign a disability rating. *See Chambers*, 417 F.3d at 1225 (stating that "where the service member was released from service without a board hearing and subsequently files a claim for disability retirement before a military correction board, '[t]he Correction Board becomes the first proper board to act (or to be asked to act) on the matter'") (quoting *Friedman v. United States*, 310 F.2d 381, 392 (Ct. Cl. 1962)). Prior to the ABCMR hearing, the Army had not assigned Mr. Prewitt a disability to which he could object. *See Doyle v. United States*, 599 F.2d 984, 1001 (Ct. Cl. 1979) (stating that "plaintiffs are required to voice their objections in such a way that the Secretary or Correction Board is aware of problems, well known to plaintiffs, in the manner a remedy is effectuated before it is effectuated"). Since Mr. Prewitt is now aware of the ABCMR's assignment of a disability rating, he may challenge it in the first instance.

of the issues involved in military disability retirement cases." *Ward v. United States*, 133 Fed. Cl. 418, 431 (2017) (quoting *Lord v. United States*, 2 Cl. Ct. 749, 754 (1983); *see also Banerjee v. United States*, 77 Fed. Cl. 522, 537 (2007) (stating that "the ABCMR is not bound by VA Rating Decisions").

Here, the Court finds that the ABCMR acted rationally when it adopted the June 17, 1970, VA decision assigning Mr. Prewitt a 30 percent disability rating. However, the Court also finds that the ABCMR acted arbitrarily by not considering whether to adopt the BVA's April 2019 correction to Mr. Prewitt's 1970 rating. Shortly after his release from active duty on March 11, 1970, AR 17, Mr. Prewitt underwent an evaluation by the VA on June 17, 1970, after which he was assigned a disability rating of 30 percent under Diagnostic Code 5301 (muscle injury) and 8211 (cranial nerve injury), AR 596-97. In its decision, the ABCMR described Mr. Prewitt's unfitting condition as "a gunshot wound to the left neck causing injury to the nerves and muscles in the left shoulder that limited range of motion . . . ." AR 43. The ABCMR stated: "The Board considered the VA rating that the applicant received for the unfitting condition, effective 12 March 1970, and adopts it as the Army rating for purposes of his disposition. Since the VA rated the unfitting condition at 30 percent, the Army rating will be 30 percent." *Id.* This decision was rational and consistent with applicable law. The report from the VA's June 17, 1970, evaluation represents the most contemporaneous record of Mr. Prewitt's condition and fitness to perform his duties *at the time of his release*. Furthermore, the VA's findings are supported by other contemporaneous medical records, such as the Army's January 1970 physical examination, AR 3213-16, and the VA's April 1970 examination, AR 479-84.[10] By adopting the VA's assigned disability rating, the ABCMR utilized the VA's schedule for rating disabilities and accounted for Mr. Prewitt's medical conditions at the time of his release from active duty.

Mr. Prewitt argues that the record does not show that the ABCMR considered other VA rating decisions, such as the ones dated May 20, 1980, and February 18, 2003, which he claims entitled him to a higher disability rating. *See* [ECF 63] at 17-18, 20-21. However, these subsequent VA rating decisions do not indicate that the VA's 1970 rating was incorrect. Rather, they demonstrate that the VA continued to reconsider Mr. Prewitt's disability ratings in response to his requests for increased ratings. For example, in the May 20, 1980, decision, the VA examiner stated: "In considering the veteran's claim, [the] VA examination on February 13, 1980, did not furnish limitation of motion but when the veteran personally demonstrated the limitation of motion . . . it became readily apparent that the veteran's disability had been under[-]evaluated." AR 614. As a result, one of the changes the VA made was to increase Mr. Prewitt's March 12, 1970, rating of 30 percent under DC 5301-8211 to 40 percent effective January 1, 1980—the date of his claim for increase. AR 615. Significantly, the examiner did not find that the 1970 rating decision under-evaluated Mr. Prewitt's condition at the time of release, only that his disability had been under-evaluated in the March 12, 1980, rating decision.[11] *See* AR 614-15.

---

[10] To the extent that Mr. Prewitt's challenges may be construed as challenging the VA's disability rating decisions, such challenges fall outside of this Court's jurisdiction. *See Addington v. United States*, 94 Fed. Cl. 779, 782 (2010).

[11] The VA rating decision dated March 12, 1980, resulted from Mr. Prewitt submitting a claim for an increased rating "due to individual unemployability." AR 612. Therein, the examiner stated that: "There is no evidence that the veteran's service-connected condition has increased in severity since his last evaluation." AR 613. The decision, therefore, did not result in an increased disability rating. *See id.*

13

Similarly, the February 18, 2003, rating decision did not alter the 1970 rating decision. Rather, it increased Mr. Prewitt's 40 percent rating under DC 5301-8211 to a combined 50 percent, effective October 23, 2002—the date of his claim for an increase—by evaluating his muscle injury and nerve injury separately. AR 795-96. This increase was "based on the current medical evidence," including medical examination and treatment in in 2001, 2002, and 2003. AR 795. The VA examiner did not call into question the 1970 rating decision.

These subsequent VA rating decisions are distinguishable from the BVA's April 17, 2019, order granting Mr. Prewitt's request for "an initial compensable rating for his service-connected scar associated with [his gun shot wound]." AR 756. In granting a 10 percent rating for residual scarring, the BVA noted that "[i]n February 2014, the [Regional Office] found that the June 1970 [Regional Office] adjudicators committed [Clear and Undisputable Error] by failing to assign a separate rating for residual scar[r]ing from [the gun shot wound] to the left neck and shoulder." AR 756-57. The BVA determined that "[t]he evidence supports a 10 percent rating under Diagnostic Code 7804 for residual scar[r]ing . . . from March 12, 1970, to January 1, 1980." AR 757. The BVA based its conclusion on the April 1970 VA examination report, which stated that the site of Mr. Prewitt's "scar was hypersensitive," *id.*, and that he reported "that the scarring was painful," *id.* In other words, the VA revisited its initial June 17, 1970, disability rating and found that it was erroneous. Thus, when the ABCMR decided to adopt the VA's June 17, 1970, rating, it should have considered whether to also adopt this correction. In sum, the Court finds the ABCMR's assignment of a 30 percent disability rating to be arbitrary. *See Kelly v. United States*, 69 F.4th 887, 894 (Fed. Cir. 2023) (noting that an "agency's decision is arbitrary and capricious when the agency decision-maker 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency'") (first and third alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).[12]

### C.     Mr. Prewitt's Challenge to His Article 15 Non-Judicial Punishment

The Army imposed an Article 15 nonjudicial punishment on Mr. Prewitt on August 25, 1969, under which he forfeited $50.00. AR 197. The punishment was based on a report that Mr. Prewitt failed "to report to [his] appointed place of duty, . . . [and] conducted [himself] in a disorderly manner." AR 195. Mr. Prewitt argues that the punishment "is void as a matter of law because of [his] patient status and [his] placement in the DES process with a permanent profile that restricted [his] physical activity." [ECF 63] at 22. He also argues that he was assigned duties outside of the limits of his existing physical profile in July 1969, which violated section 8-15 of Army Regulation 40-400; therefore, he contends his absent without official leave charge is void. *See id.* at 22-23; [ECF 87] at 10. He further contends that he "was charged with being

---

[12] The government argues that "even if Mr. Prewitt had presented the 2019 [BVA] decision to the ABCMR, there is no reason to think that the ABCMR would have set the Army disability rating at 40 percent." [ECF 79] at 32. The Court will not accept the government's invitation to predict the outcome of the ABCMR's consideration of the corrected VA disability rating. First, the government concedes that "[i]t is unclear whether the ABCMR was aware of this 2019 [BVA] decision." *Id.* Next, the government acknowledges that "[i]f . . . the ABCMR were to adopt a 40% combined disability rating, . . . [t]he 10% increase may . . . impact the calculation of his retired pay." [ECF 102] at 7 (emphasis omitted). Given the significance of this determination, the Court must ensure that the ABCMR "examine[s] relevant data and articulate[s] satisfactory explanations for [its] decisions." *Van Cleave v. United States*, 70 Fed. Cl. 674, 679 (2006) (citing *Yagjian v. Marsh*, 571 F. Supp. 698, 701 (D.N.H.1983)).

14

'Boisterous' and 'Loud' neither of which are within the punitive articles." [ECF 63] at 22. Additionally, he questions the Army commander's authority to impose an Article 15 punishment and claims that his rights under the First and Sixth Amendments of the United States Constitution were violated. *See* [ECF 87] at 10.

An Article 15 nonjudicial punishment under the UCMJ "is the least formalized method of discipline, conducted personally by the accused's commanding officer." *Boyce v. United States*, 165 Fed. Cl. 187, 203 (2023). "When reviewing an Article 15 proceeding, the court applies a deferential standard: '[I]t is not this court's function to review the merits of findings of guilt . . . but only the disregard or violation of the Constitution, statute or regulations in the conduct of the proceedings.'" *Meyer v. United States*, 127 Fed. Cl. 372, 381 (2016) (alteration in original) (quoting *Cochran v. United States*, 1 Cl. Ct. 759, 770 (1983)). Here, the Court does not reach Mr. Prewitt's challenges to his Article 15 punishment because they are barred by the statute of limitations. As noted above, a Tucker Act claim is "barred unless the petition thereon is filed within six years after such claim first accrues," 28 U.S.C. § 2501, and a claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for [the plaintiff's] money,'" *Jones*, 30 F.4th at 1100 (alterations in original) (quoting *Martinez*, 333 F.3d at 1303). Here, because Mr. Prewitt's Article 15 punishment was imposed on August 25, 1969, and because he did not file his complaint in this Court until November 9, 2022—over fifty years later—the claim is outside of the Tucker Act's six-year statute of limitations. Therefore, the Court lacks jurisdiction over this claim and must dismiss it. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV.   CONCLUSION

Accordingly, Mr. Prewitt's MJAR is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is **GRANTED** with respect to his challenge to the ABCMR's assignment of a 30 percent disability rating, and it is **DENIED** with respect to all other challenges. The government's MJAR is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is **GRANTED** except with respect to upholding the ABCMR's assignment of a 30 percent disability rating. Additionally, the government's motion to dismiss Mr. Prewitt's challenge to the Article 15 nonjudicial punishment is **GRANTED**.

This case **SHALL BE REMANDED** to the ABCMR. Pursuant to RCFC 52.2, the Court provides the following remand instructions:

1. The remand period **SHALL TERMINATE** on April 11, 2025, and proceedings in this case are **STAYED** until that date. If the ABCMR fails to issue its decision by the termination of the remand period, the parties shall file motions with the Court pursuant to RCFC 52.2(c).

2. The ABCMR **SHALL CONSIDER** whether to adopt the correction to Mr. Prewitt's June 17, 1970, VA rating decision made by the BVA on April 17, 2019. *See* AR 740, 756-57.

15

3. The government **SHALL FILE** a status report every 30 days, starting from the date of this order until the ABCMR issues a decision. The status report shall advise the Court of the status of the remand proceedings.

4. The ABCMR is **DIRECTED** to promptly forward its decision to Mr. Prewitt and to counsel of record for the United States, and to forward two copies to the Clerk of Court pursuant to RCFC 52.2(d).

5. Each party **SHALL FILE** a notice pursuant to RCFC 52.2(e) within 30 days of the ABCMR decision indicating their respective positions on whether the ABCMR's decision affords a satisfactory basis for disposition of the case or whether further proceedings before the Court are required and, if so, the nature of such proceedings.

The Clerk is **DIRECTED** to serve a certified copy of this Memorandum Opinion and Order on the ABCMR at: Office of Army Review Boards Agency, 251 18th Street South, Suite 385, Arlington, VA 22202-3531.

    **IT IS SO ORDERED.**

                                                    s/ Thompson M. Dietz
                                                    THOMPSON M. DIETZ, Judge